UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDDY RODRIGO GREGORIO ORDOÑEZ,

                    Petitioner,

          v.

PAMELA BONDI, et al.,

                    Respondent.

Case No. 2:25-cv-02356-JHC-TLF

REPORT AND RECOMMENDATION

Noted for ___January 5, 2026___

Petitioner Eddy Rodrigo Gregorio Ordoñez has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 1. Petitioner is detained by United States ("U.S.") Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner asserts claims for (1) violation of his Fourth Amendment right to be free from unreasonable seizure; (2) violation of his Fifth Amendment right to Due Process because his arbitrary detention is not based on a rational and individualized determination of whether he is a safety or flight risk nor considering the merits of his circumstances and eligibility for relief from deportation; and (3) violation of his Fifth Amendment right to Due Process based on the stated intent to arbitrarily transfer petitioner out of the Northwest interfering with his access to retained counsel and his established eligibility to pursue Special Immigrant Juvenile Status (SJIS). *Id*.

REPORT AND RECOMMENDATION - 1

The Government has filed a return memorandum. Dkt. 11. Petitioner has filed a response. Dkt. 13. The parties appeared for oral argument via Zoom on December 18, 2025, at the Court's direction. Dkt. 14.

The Court, having considered the parties' submissions and the governing law, concludes that petitioner's federal habeas corpus petition (Dkt. 1) should be granted. The Court should order that petitioner be released from custody within 24 hours of the District Judge's final order adopting the report and recommendation, pursuant to the conditions of his previous release and that petitioner may not be re-detained until after an immigration court hearing is held (with adequate notice and due process protections) to determine whether detention is appropriate.

## I.    BACKGROUND

Petitioner is a native and citizen of Guatemala who entered the United States without inspection or parole on or about December 17, 2018, with his father when he was approximately 10 years old. Dkt. 12 (Decl. of Michelle Lambert, Ex. A, Notice to Appear); Dkt. 13-1 at 2 (Decl. of Eddy Rodrigo Gregorio Ordoñez). The U.S. Department of Homeland Security ("DHS") issued a notice to appear charging petitioner as inadmissible pursuant to 8 U.S.C. §§ 1182 (a)(6)(A)(i). *Id.* He was released from custody along with his father during the pendency of his removal proceedings. Dkt. 1 at 6 (Petition). Petitioner indicates he does not remember much about that time, that he primarily spoke Mam, spoke and understood very little Spanish and did not speak English. Dkt. 13-1 (Gregorio Ordoñez Decl.). On February 18, 2020, when he was 12 years old, petitioner and his father failed to appear for his removal proceedings and an immigration judge ordered petitioner removed *in absentia*. Dkt. 12 (Lambert Decl., Ex.

REPORT AND RECOMMENDATION - 2

B, Decision); Dkt. 6 (Petition). Petitioner's father died in 2021 after which petitioner indicates he had no family and had to support himself. Dkt. 6 (Petition); Dkt. 13-1 (Gregorio Ordoñez Decl.). As he had no living parent or family caregiver in the U.S., petitioner was found within the jurisdiction of the Linn County Juvenile Court of the State of Oregon and made a ward of the court on April 18, 2025. *Id.* When he was detained, petitioner was residing with a foster family who, the petition contends, intended to house him permanently. *Id.*

On November 18, 2025, U.S. Customs and Border Patrol ("CBP") agents took petitioner into custody resulting from a surveillance operation targeting a different individual. Dkt. 12 (Lambert Decl., Ex. C. Form I-213, at 2; Ex. D, Arrest Warrant). Petitioner was transferred to ICE custody, and he is currently detained at the Northwest ICE Processing Center. *Id.* (Lambert Decl., Ex. C). Petitioner has moved to reopen his removal proceedings in immigration court, and the parties represented at oral argument that petitioner has been granted a stay of his removal pending decision on the motion to reopen. Dkt. 13-2 (Decl. of Elena CaJacob).

On November 20, 2025, the Linn County Juvenile Court issued findings regarding petitioner's eligibility for Special Immigrant Juvenile Classification. Dkt. 1 (Petition). Among other facts, the petition represents the court found that petitioner had been abused, abandoned, and/or neglected by his parents and that it is not in petitioner's best interest to be returned to Guatemala, rather he should remain a ward of the state. *Id.*

## II.    DISCUSSION

REPORT AND RECOMMENDATION - 3

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, petitioner contends that his arrest and detention violate the Fourth Amendment prohibition against unreasonable search and seizure (Dkt. 1, Claim One, Petition at 9-10) and the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. 1, Claims Two and Three, Petition at 10-12).

A.      Due Process

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Determining whether a particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action;

REPORT AND RECOMMENDATION - 4

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. 893; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). And district courts have subsequently applied the *Mathews* test in similar circumstances. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21, FN 4. Accordingly, the Court will consider each *Mathews* factor in turn to determine whether petitioner's arrest and detention comport with constitutional due process requirements.

1)    Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). Here, petitioner was arrested in public and detained and transferred to a facility in a different state where he remains in custody. Thus, the Court should find petitioner has been deprived of an established interest in his liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 ("Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty.").

REPORT AND RECOMMENDATION - 5

The Government argues that although petitioner was released during the pendency of his immigration proceedings, because he failed to appear for an immigration hearing and a final order of removal was issued *in absentia*, the Government was entitled to re-detain petitioner without any additional notice or process. Dkt. 11. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *see also Zadvydas*, 533 U.S. at 696, 121 S.Ct. 2491 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F.Supp.3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

Thus, the Court should find the Constitution protects petitioner's interest in his liberty by requiring due process if it is to be deprived.

2)      Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

REPORT AND RECOMMENDATION - 6

Here, although the Government contends that petitioner was properly detained based upon the final order of removal that was issued *in absentia*, the record shows the petitioner was originally stopped and detained by ICE agents not based upon the final order of removal but in the context of a surveillance action that was directed at an entirely different individual. *See* Dkt. 12 (Lamber Decl., Ex. C, Form I-213). There is also conflicting evidence regarding the circumstances surrounding petitioner's arrest. Petitioner asserts ICE officers approached a car he was sitting in with another individual and when he stepped out of the car he was pushed to the ground, injuring his face and teeth, and was then put in handcuffs and taken into custody. Dkt. 13-1. Petitioner indicates after he was handcuffed the officers asked him his name and he gave them his first name. *Id.* He indicates they drove him to the detention center in Portland where they took his fingerprints and told him to sign a paper but he refused – he indicates they did not tell him what was on the paper and he was not able to read it. *Id.* Petitioner indicates at no time was he told the reason he was being detained. *Id.*

The Government submits a copy of Form I-213 dated November 18, 2025, which states that officers were conducting a surveillance operation on a different individual and saw petitioner who was "a possible associate" of the target of the surveillance walk out of the target individual's address and enter a vehicle. Dkt. 12-3 at 3. The Form I-213 states the officers initiated the encounter with emergency lights and when they approached the vehicle, petitioner and another individual tried to flee and the officers subsequently apprehended petitioner. *Id.* The Form I-213 states that after questioning and system checks petitioner was identified and found to be illegally in the United

REPORT AND RECOMMENDATION - 7

States and that petitioner had been issued a final order for removal *in absentia* to Guatemala on February 18, 2020. *Id.*

The Government also presents a 'Warrant for Arrest of Alien" issued on November 18, 2025, which states that an immigration officer has "determined that there is probable cause to believe that [petitioner] is removable from the United States based upon "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* The warrant further states that "you are commanded to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the [petitioner]." *Id.* While the warrant is dated November 18, 2025, the Government presents no evidence as to whether this warrant was issued before or after petitioner was taken into custody. *Id.*

But even if petitioner's arrest and detention was motivated by the final removal order issued *in absentia*, it does not necessarily follow that petitioner can be detained without a hearing. Even if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate the detention in a manner that comports with due process. *See Guillermo M.R. v. Kaiser*, 791 F.Supp.3d 1021, 1037-38, No. 25-cv-05436-RFL, (N.D. Cal. July 17, 2025) (finding "undeniably stark" risk of erroneous deprivation where the Government contends that "notwithstanding a neutral arbiter's determination that petitioner should be released, ICE is entitled to unilaterally terminate the IJ's order by re-detaining petitioner without a hearing for at least six months, based on ICE's own determination in its sole discretion that additional

REPORT AND RECOMMENDATION - 8

conditions of release unilaterally set by ICE had been violated"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 (finding Due Process violation where petitioner was re-detained without notice or a hearing after he was previously released based on purported violations of the conditions of his release).

The Government argues because petitioner is subject to a final order of removal issued *in absentia*, he was not entitled to a hearing under the relevant statutes and regulations before he was re-detained and that he is properly detained under 8 U.S.C. 1231 because there is a final order of removal in petitioner's case. Dkt. 12. But even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process. *See, e.g., Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

Here, the parties agree that petitioner was originally detained upon, or shortly after, entering the United States without inspection or parole on or about December 17, 2018. Dkt. 12 (Lambert Decl., Ex. A, Notice to Appear); Dkt. 13-1 at 2 (Gregorio Ordoñez Decl.). The U.S. Department of Homeland Security ("DHS") issued a notice to appear charging petitioner as inadmissible pursuant to 8 U.S.C. §§ 1182 (a)(6)(A)(i) and petitioner was released from custody along with his father during the pendency of these proceedings. *Id.*; Dkt. 1 at 6 (Petition). On February 18, 2020, petitioner failed to appear for his removal proceedings and an immigration judge ordered him removed *in absentia*. Dkt. 12 (Lambert Decl., Ex. B, Decision). But the Government presents no evidence that

REPORT AND RECOMMENDATION - 9

petitioner was provided with the final order of removal, notice of the revocation of his release based upon the final order of removal, or even that he was properly provided notice of the hearing at which he failed to appear that resulted in the issuance of the final order of removal. The final order of removal also does not state anything regarding revocation of release. Dkt. 12-2.

Furthermore, although the Government does not present documentation of ICE's initial decision to release petitioner or the conditions of his release, because petitioner was issued a notice to appear charging him as inadmissible pursuant to INA 212(a)(6)(A)(i) (8 U.S.C. §§ 1182 (a)(6)(A)(i)), his release was necessarily granted after a determination by immigration officials that petitioner did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO, 2025 WL 3265446, at *1 (E.D. Cal. Nov. 24, 2025).

Arresting and re-detaining petitioner on November 18, 2025, without pre-deprivation notice and the opportunity to be heard and consideration of those factors before deciding whether to detain petitioner – when he was found eligible for release in 2018 -- poses a significant risk of an erroneous deprivation of petitioner's liberty interest in his continued freedom from detention. *See, e.g.*, *Kelly v. Almodovar*, 25 Civ. 6448 (AT), 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (finding that "an individualized

REPORT AND RECOMMENDATION - 10

assessment of a suspect's flight risk or dangerousness" is required by 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8) before detention, and this requirement is not satisfied by a review of criminal charges); *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1035, No. 5:25-cv-05632-PCP, (N.D. Cal. July 24, 2025) ("Providing [petitioner] with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Doe*, 2025 WL 691664, at *6 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."). Providing petitioner notice of what the Government now asserts are the grounds for the revocation of his release and re-detention – that he failed to appear for a hearing in his removal proceedings and was ordered removed – and the opportunity to be heard would allow him to explain his failure to appear, the fact that he was a minor and was unaware of and/or did not receive notice of the proceedings, thereby demonstrating that the official's original assessment that he was not a flight risk and should not be detained should remain unchanged.

The Court rejects any "suggestion that government agents may sweep up any person they wish and hold that person [ ] without consideration of dangerousness or flight risk so long as the person will, at some unknown [future] point in time, be allowed to ask some other official for his or her release[,]" as this course of action "offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Kelly*, 2025 WL 2381591 at *3.

Furthermore, although not determinative of petitioner's Due Process claim, it also appears that, under the statute and regulations, the Government failed to provide

REPORT AND RECOMMENDATION - 11

petitioner the proper notice of the decision to detain him beyond the initial 90-day removal period after a final order of removal is entered, or that the required review of petitioner's records and consideration of factors related to danger and risk of flight required under the regulations took place.

Under 8 U.S.C.  § 1231(a), DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C.  §§ 1231(a)(2), (a)(1)(B). 8 U.S.C. § 1231(a)(1) provides that when a noncitizen is ordered removed, the Attorney General "shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period.')." The removal period begins to run, as relevant to this case, on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). When, as here, the order is entered *in absentia*, 8 C.F.R. § 1241.1(e) states the order becomes administratively final immediately upon entry of the order. But case law reflects that the order in fact becomes final upon the earlier of (i) the 180-day period to file a motion to reopen expires, or (ii) the Board of Immigration Appeals ("BIA") affirms the order. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021).

In this case, the *in absentia* order of removal was entered on February 18, 2020, and petitioner did not move to reopen within 180 days thereafter, by August 16, 2020. Petitioner was not removed within ninety days of the order becoming final on August 16, 2020. *See* 8 U.S.C. § 1231(a)(1)(B)(i).

The statute provides that the removal period "shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the [noncitizen] ... conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal" under 8 U.S.C. § 1231(a)(1)(C). But courts have held that a failure to

REPORT AND RECOMMENDATION - 12

appear at removal proceedings is not an act sufficient to trigger extension of the removal period. *See, e.g., Farez-Espinoza v. Chertoff*, 600 F. Supp.2d 488, 501 (S.D.N.Y. 2009). Rather the "overwhelming" weight of authority applying § 1231(a)(1)(C) indicates that "the removal period is subject to tolling where the noncitizen acts to prevent his or her removal through judicial action, or by demonstrating some sort of bad faith failure to cooperate." *Guan Zhao Lin v. Holder*, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *3 (S.D.N.Y. July 2, 2010) (internal quotation marks and citation omitted, alterations normalized); *see also Farez-Espinoza*, 600 F. Supp.2d at 501 (noting that courts have read § 1231(a)(1)(C) "narrowly" and applied it only "where the alien has demonstrated some sort of bad faith failure to cooperate," and "committed some affirmative and misleading act to thwart the removal process or expressly refused to cooperate," and collecting cases). Thus, petitioner's failure to appear is not the sort of bad faith action that would allow for extension of the removal period, particularly where the final order was issued *in absentia* when he was a child, and he indicates he was unaware of the order and thus could not have affirmatively acted to thwart its enforcement. *See M.L.G.G. v. Wamsley*, 2025 WL 3539183 (D. Or. Dec. 10, 2025) (Finding petitioner's failure to appear at a hearing during removal proceedings is not the sort of bad faith action that would allow extension of the removal period where she presented evidence she was not aware of the order of removal—which was issued *in absentia* when she was a child—until she was arrested and so could not have affirmatively acted to thwart its enforcement.).

In addition, the removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody. *Ulysse*

REPORT AND RECOMMENDATION - 13

*v. Dept. of Homeland Security*, 291 F. Supp.2d 1318, 1325-26 (M.D. Fla. 2003). The ninety days therefore began to run in August 2020 and not when petitioner was arrested by ICE in November 2025. Thus, the 90-day "removal period" has expired and petitioner's detention cannot be governed by 8 U.S.C. 1231(a)(1), (2).

Under 1231(a)(3), after the removal period expires, the noncitizen "shall be subject to supervision" pending removal and the statute supplies a list of requirements for that supervision, supplemented by additional regulations. 8 U.S.C. § 1231(a)(3). Furthermore, under 1231(a)(6), after the removal period expires DHS has the discretionary authority to continue to detain a noncitizen who is "inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal[.]" 8 U.S.C. § 1231(a)(6).[1]

Although the Government is not clear in their briefing about the applicable subsection of 8 U.S.C. § 1231, it appears that petitioner has been found to be inadmissible under section 1182, and that he is therefore likely subject to § 1231(a)(6).[2]

Petitioner argues that the relevant statutes and regulations also require notice and an opportunity to be heard before respondents conduct an individualized custody determination regarding his detention beyond the 90-day removal period. The relevant

---

[1] Although 8 U.S.C. § 1231(a)(6) refers to the "Attorney General" as having responsibility for detaining noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security ("DHS"). *See also* 6 U.S.C. § 251; *Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

[2] If petitioner were subject to 8 U.S.C. § 1231(a)(3), he would be subject to release on supervision, not to detention.

REPORT AND RECOMMENDATION - 14

regulations governing "continued detention of inadmissible, criminal, and other aliens beyond the removal period" do appear to require that officials conduct an initial custody review for noncitizens detained under 8 U.S.C. § 1231(a) and that they conduct a records review *prior to the expiration of the removal period*. *See* 8 C.F.R. §§ 241.4(h)(1).

The regulations provide that "[t]his initial post-order custody review will consist of a review of the alien's records and any written information submitted in English to the district director by or on behalf of the alien" and "[t]he district director or Director of the Detention and Removal Field Office will provide written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release." 8 C.F.R. §§ 241.4(h)(1), (2). "The district director's or Director of the Detention and Removal Field Office's review will include but is not limited to consideration of the factors described in paragraph (f) [3]

---

[3] 8 C.F.R. § 241(f) provides:

> Factors for consideration. The following factors should be weighed in considering whether to recommend further detention or release of a detainee:
> (1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody;
> (2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal history;
> (3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;
> (4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available;
> (5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully;
> (6) Prior immigration violations and history;
> (7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults; and
> (8) Any other information that is probative of whether the alien is likely to—
> (i) Adjust to life in a community,

REPORT AND RECOMMENDATION - 15

of this section. Before making any decision to release a detainee, the district director must be able to reach the conclusions set forth in paragraph (e)[4] of this section." 8 C.F.R. § 241.4(h)(3).

The regulations further provide that "[a] copy of any decision by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or to detain an alien shall be provided to the detained alien. A decision to retain custody shall briefly set forth the reasons for the continued detention." 8 C.F.R. §§ 241.4(d)(1), (2). Officials "may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States …[or] may also, in accordance with the procedures and consideration of the factors set forth in this section, continue in custody any alien described in paragraphs (a) and (b)(1) of this section." 8 C.F.R. §§ 241.4(d)(1), (2). The regulations further state that "[a]ll notices, decisions, or other documents in connection with the custody reviews conducted under

---

(ii) Engage in future acts of violence,
(iii) Engage in future criminal activity,
(iv) Pose a danger to the safety of himself or herself or to other persons or to property, or
(v) Violate the conditions of his or her release from immigration custody pending removal from the United States.

[4] 8 C.F.R. § 214.4(e) provides:

Criteria for release. Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
(2) The detainee is presently a non-violent person;
(3) The detainee is likely to remain nonviolent if released;
(4) The detainee is not likely to pose a threat to the community following release;
(5) The detainee is not likely to violate the conditions of release; and
(6) The detainee does not pose a significant flight risk if released.

REPORT AND RECOMMENDATION - 16

this section by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner shall be served on the alien, in accordance with 8 CFR 103.8, by the Service district office having jurisdiction over the alien." *Id.*

Finally, the regulations provide that "[a]ny alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody.[…] *Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole*. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l) (emphasis added).

Under the regulations, the noncitizen should be given notice and an opportunity to submit information with regard to the initial custody determination for detention or release during the period beyond the removal period. An individualized custody review should take place with considerations of danger and flight risk and the noncitizen must be provided notice of the custody decision. Notice of the reasons for revocation release or parole and an informal interview after the noncitizen's return to custody to allow them an opportunity to respond to the reasons for revocation, are also required by the regulations. The Government fails to present evidence that they made any effort to follow any of these procedures.

The Government argued during oral argument that these regulations do not apply because petitioner was not detained during the initial 90-day removal period, and these regulations contemplate only continued detention beyond the 90-day period. But these

REPORT AND RECOMMENDATION - 17

regulations appear to be the only relevant regulations governing the determinations regarding custody under 8 U.S.C. § 1231(a)(6), beyond the initial 90-day removal period, and the Government does not point to any other regulations that would otherwise control. And, even if the Court assumes for purposes of analysis that these regulations are not controlling,  the Court should hold that under the *Mathews* factors a pre-deprivation hearing is required by Due Process.

The Court should find the risk of erroneous deprivation of petitioner's liberty interest in the absence of a pre-detention hearing is high.

3)    Government's Interest

Under the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining petitioner without a pre-deprivation hearing.

Consistent with other courts in this district, this Court should find that "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 2025 WL 2402130, at *5 (citing *Ortega*, 415 F. Supp. 3d at 970) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Even if the process may present *some* administrative burden, given the high risk of erroneous deprivation, the fundamental liberty interest at stake, and the fact that ICE was previously convinced that petitioner would not flee nor pose a danger to his community, the Court should find that providing effectively no pre-detention process—as was done here—is constitutionally deficient. *See Ledesma Gonzaelez v. Bostock,* 2025 WL 2841574 at *8 (W.D. Wash., Oct. 7, 2025)*; E.A. T.-B.*, 2025 WL 2402130, at *6 ("Although the Government notes that Petitioner may request a bond hearing while

REPORT AND RECOMMENDATION - 18

detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Based on this review of the *Mathews* factors, the Court should find that petitioner has a protected liberty interest in freedom from detention, and that due process requires that petitioner receive a hearing before an immigration judge before he can be re-detained. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Once immigration court proceedings are underway, decisions regarding continued release are to be made by the Immigration Judge with the protections of judicial due process.").

A.  Fourth Amendment

Petitioner also argues his Fourth Amendment rights were violated because he was unreasonably seized without a warrant and without reasonable suspicion.

Because the petition may be granted and petitioner may be released based on the Due Process claim discussed above, the Court need not analyze petitioner's Fourth Amendment claim or his alternative Due Process claim. If the Court decides to review these issues, an evidentiary hearing should be conducted.

Petitioner asserts ICE officers approached a car he was inside of with another individual and when he got out of the car he was thrown to the ground, injuring his face

REPORT AND RECOMMENDATION - 19

and teeth, and then put in handcuffs and taken into custody. Dkt. 13-1 (Gregorio Ordoñez Decl.). The Government submits a copy of Form I-213 which states that officers were conducting surveillance on *a different individual* and saw petitioner who was possibly an associate of the target of the surveillance walk out of the target's address and enter a vehicle. Dkt. 12-3 at 3. The officer states they initiated the encounter with emergency lights and when they approached the vehicle petitioner and another individual tried to flee. The officer indicates after questioning and system checks they were identified and found to be illegally in the United States and that petitioner had been issued a final order for removal *in abstentia* to Guatemala on February 18, 2020. *Id.*

Respondent argues the Court lacks jurisdiction to decide this issue under 8 U.S.C. 1252(b)(9) because it is potentially related to petitioner's removal proceedings which he has moved to reopen. Dkt. 11. This statute is called the "zipper clause" of the INA because it "consolidates or 'zips' 'judicial review' of immigration proceedings into one action in the court of appeals." *Singh v. Gonzales*, 499 F.3d 969, 976 (9th Cir. 2007) (citation modified). "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)," but claims that "arise from" removal proceedings must be channeled through the petition-for-review process. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (holding that section 1252(b)(9) applied to Sixth Amendment right-to-counsel claim). The jurisdictional question appears to be unsettled in the Ninth Circuit. *See Aredondo v. Lyons*, No. 2:25-CV-01838-TMC, 2025 WL 3436812, at *3 (W.D. Wash. Oct. 15, 2025) (At best, the jurisdictional question is unsettled in the Ninth Circuit.).

REPORT AND RECOMMENDATION - 20

Release as a habeas corpus remedy may not be reasonably related to, or the proper remedy for, the alleged Fourth Amendment violations. In *United States v. Garcia-Beltran*, 443 F.3d 1126, 1131–32 (9th Cir. 2006) the Ninth Circuit stated:

> In *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1035, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the Supreme Court encountered the situation where Lopez–Mendoza, an illegal alien, objected to his deportation hearing solely on the ground that he had been arrested illegally, i.e., by INS agents lacking a "warrant to search the premises [where Lopez–Mendoza was apprehended] or to arrest any of its occupants." The Court rejected Lopez–Mendoza's argument, stating: "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.* at 1039, 104 S.Ct. 3479. In essence, the Court declined to hold that the consequences of an illegal arrest, search, or interrogation is to let the defendant go free because of the unlawfulness of the arrest, search, or interrogation. Instead, *Lopez–Mendoza* established that a defendant, including his identity, is properly before a court in a criminal or civil proceeding despite the initial illegal police action.

*See also Velasquez v. LaRose*, No. 25-CV-3137 JLS (MSB), 2025 WL 3251373, at *4 (S.D. Cal. Nov. 21, 2025) (Denying Fourth Amendment claim immigration habeas claim where "[petitioner] does not explain why release is the remedy for the alleged Fourth Amendment violations."); *but see Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *16 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) (granting habeas petition based on finding of Fourth Amendment violation).

To the extent the Court concludes that petitioner has shown his Fourth Amendment and alternative Due Process claims (First and Third Claims, Dkt. 1 at 9-12) may entitle him to release and that it must reach the issues, the Court should conduct a hearing on the merits of those claims as there are conflicting facts in the record

REPORT AND RECOMMENDATION - 21

regarding the circumstances of petitioner's arrest and detention, and the status of the removal order. And, the record is unclear about how petitioner's detention may interfere with his action pursuing SIJS status and the likelihood of petitioner being deported to a third country, given that the parties have indicated there is currently a stay of the removal order.

### III.    CONCLUSION

Based on the foregoing, the undersigned recommends that the Court should GRANT the petition for writ of habeas corpus with respect to petitioner's Due Process challenge (Claim Two). The Court should order that petitioner be released from custody within 24 hours of the District Judge's final order adopting the report and recommendation, pursuant to the conditions of his previous release and that petitioner may not be re-detained until after an immigration court hearing is held (with adequate notice and due process protections) to determine whether detention is appropriate. To the extent the Court concludes that petitioner has shown his Fourth Amendment and alternative Due Process claims (First and Third Claims, Dkt. 1 at 9-12) may entitle him to release and that it must reach the issues, the Court should conduct a hearing on the merits of those claims. A proposed Order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

REPORT AND RECOMMENDATION - 22

U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **January 5, 2026**, as noted in the caption.

        Dated this 19th day of December, 2025.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23